46898.   HAMRICK v. SEWARD.

ARGUED JANUARY 31, 1972—DECIDED APRIL 3, 1972.

*Willis J. Richardson, Jr.,* for appellant.
*Alan S. Gaynor,* for appellee.

EBERHARDT, Judge. ■ If there is any evidence to support the findings of the trial court, we must affirm. *West v. West,* 228 Ga. 397, 398 (185 SE2d 763). The judge, sitting without a jury as the trior of factual issues, is the judge of the credibility of the witnesses, including parties. *Mustang Transportation, Inc. v. W. W. Lowe & Sons,* 123 Ga. App. 350 (3) (181 SE2d 85). On appeal the evidence is to be construed to uphold rather than to destroy the findings and judgment. *Associated Mutuals v. Pope Lumber Co.,* 200 Ga. 487, 496 (37 SE2d 393).

■ The sole enumeration of error is that the adoption was granted without the written consent of the child's father, and that there was no allegation or sufficient evidence to show an abandonment of the child by its father.

The adoption law of this State, found in *Code Ann Ch.* 74-4, provides by § 74-403 that "Except as otherwise specified in the following subsections, no adoption shall be permitted except with the written consent of the living parents of the child." Concededly the father of this child has not consented. However, by *Code Ann.* § 74-403 (2) it is provided that: "Where a decree has been entered by a superior court . . . ordering a parent to support a child and such

parent has wantonly and wilfully failed to comply with the order for a period of 12 months or longer, the consent of such parent shall not be required and the consent of the other parent alone shall suffice . . ."[1]

It was held in *Sale v. Leachman,* 218 Ga. 834 (131 SE2d 185), reversing *Sale v. Leachman,* 106 Ga. App. 879 (129 SE2d 88), that the 12 months period referred to in this section is the period next preceding the filing of the petition for adoption. For other discussion of this provision see *Carpenter v. Forshee,* 103 Ga. App. 758 (3) (120 SE2d 786).

Thus the question here is whether there is any evidence in this record to support the findings of the trial court that during this period the father did wantonly and wilfully fail to support the child as ordered to do by the decree. We think there is. Under the uncontradicted evidence the father obtained employment in March, 1970, and has worked regularly since that time. While the amount of his earnings was not shown, he has at no time contended that his earnings were not sufficient in amount to enable him to make the payments if he had chosen to do so. Indeed, he now says that from his earnings he has saved up enough and has it invested in United States Savings Bonds to pay in full the arrearages. This evidence was sufficient in and of itself to justify the court to infer that the failure to make the payments for a period of a year before the adoption proceeding was filed was wilful and wanton, and the finding of wilfulness and wantonness is amply supported. It meets the test spelled out in *Carpenter v. Forshee,* 103 Ga. App. 758, 773, supra, where we held that " 'wantonly and wil-

---

[1]This provision does not work an abandonment where the child is in the custody of another, no support for it is needed or requested, and for a year prior to the adoption proceeding the father merely fails to provide support; there must be failure to comply with a decree of the superior court requiring payment of support by the father. See *Coleman v. Way,* 217 Ga. 366 (2) (122 SE2d 104), and citations.

fully' means without reasonable excuse, with a conscious disregard of duty, willingly, voluntarily, and intentionally."

Appellant relies heavily upon such cases as *Glendinning v. McComas,* 188 Ga. 345 (3 SE2d 562), affirming *McComas v. Glendinning,* 59 Ga. App. 234 (200 SE 304), *Johnson v. Strickland,* 88 Ga. App. 281 (76 SE2d 533), and *Wheeler v. Little,* 113 Ga. App. 106 (147 SE2d 352), but these cases are inapposite. As to *Glendinning* and *Johnson,* it must be observed that the provision of *Code Ann.* § 74-403 (2), set out above, was not in the law when they were decided. This provision was incorporated into the Code section by an amendment found in Ga. L. 1950, p. 289. It made a substantial change in the law as to what must be shown to obviate the necessity of obtaining the consent of the father who, under a decree of court, is required to pay support for the child and who wantonly and wilfully fails to do so. The results in *Glendinning* and *Johnson* might very well have been different if the law had been as it now stands when they were decided. It follows, of course, that if the provision included by the 1950 amendment had not been added it would still be necessary to show abandonment as defined in *Glendinning* and *Johnson;* or, if the father had been in compliance with the decree for child support it would be necessary to show that kind of abandonment, which is one of the grounds excusing the obtaining of consent listed at the opening of *Code Ann.* § 74-403 (2) and which was there before the 1950 amendment. The factual situation in *Wheeler* was altogether different, where the aunt of a child sought to adopt it. Its mother was dead, and the father had left the child to live with the aunt. He had failed to contribute to the support of the child, but there was no decree of court directing him to do so.

Appellant contends that he had, on three occasions in 1970 and on one occasion in 1971, offered to make partial payment of his arrearages in child support under the decree and that she had rejected his offer, saying that she wanted total payment thereof, and that if he should send a part

payment she would return it. Was this sufficient to bring him in compliance with the decree? We think not.

In the first place, the offers to make partial payment did not amount to a lawful tender, just as the trial court found. "A tender, to be effectual, must be for the full amount due." *Smith v. Pilcher*, 130 Ga. 350, 355 (60 SE 1000). Moreover, he conceded in his testimony that he did not, at the time, have the money, but asserts that after the mother's refusal of his offers he had a payroll deduction instituted for the purchase of United States Savings Bonds and through this method had accumulated an amount sufficient to cover the full amount due. He did not, however, say that he had, at any time, offered to her the bonds or money in an amount sufficient to pay the amount due; only that he was now willing to do so. She was authorized to reject his offers of partial payment.

Even if he had tendered the bonds or money at the time of the hearing it would have been ineffective, for an offer to pay up the arrearages comes too late after the filing of the petition for adoption. In Re Adoption of Eddy (Okla.), 487 P2d 1362. Nor would payment after that time restore the requirement of his written consent to the adoption. In Re Burton's Adoption, 147 Cal. App. 2d 125 (305 P2d 185); Laslie v. Cole (Tex. Civ. App.), 465 SW2d 811. Rights of the parties are generally fixed as of the time the petition is filed and served.

He admits that he has been continuously employed since March, 1970, and the court found that he had been in position to make the payments of support under the decree since that time, but had not done so. If he could not pay up the arrearages in a manner satisfactory to the mother of the child, he could have started paying support on a current basis at any time, as was done in *Sale v. Leachman*, 218 Ga. 834, supra; and if he had done so, under the holding in that case, it would have been necessary to obtain his consent for the adoption, or to show an abandonment. But he did not. He does not contend that he has ever tendered payment of the amount for a current period. He does not

contend that he could not have paid on a current basis since the beginning of his employment. He has not at any time sought to obtain a change in the provision for support under the decree. Indeed, he now contends that he has saved up enough money for paying the full amount of the arrearage.

Did the visits of the father to the child and the presentation to him of Christmas gifts and a suit of clothes on one occasion, amount to a compliance with the decree so as to restore the requirement for his written consent to the adoption? The father is not entitled to credit on his alimony or child support obligation under the decree for any voluntary payments directly to the child or for items of food, clothing, etc., which he may have given to him. *Fischer v. Fischer,* 164 Ga. 81 (5) (137 SE 821); *Kirby v. Johnson,* 188 Ga. 701 (1, 3) (4 SE2d 643); *Swain v. Wells,* 210 Ga. 394, 400 (80 SE2d 321); *Wills v. Glunts,* 222 Ga. 647, 649 (151 SE2d 760); *Taylor v. Taylor,* 216 Ga. 767, 769 (119 SE2d 571); *Creaden v. Krogh,* 75 Ga. App. 675, 678 (44 SE2d 136); *Christman v. Griffin,* 84 Ga. App. 650 (2) (66 SE2d 835). In other states having similar statutes it has been held that such visits and the purchase of toys, bicycles, clothes, and other gifts to the child do not amount to support within the requirements of the decree of the court and thus do not prevent the operation of the statutory provision obviating the necessity for his written consent. In Re Adoption of Greer (Okla.), 463 P2d 677; In Re Adoption of Eddy (Okla.), 487 P2d 1362; In Re Adoption of Oukes, 14 Cal. App. 3d 459 (92 Cal. Rptr. 390). We conclude that this conduct did not amount to a compliance.

It is contended that the evidence as a whole does not reflect any intention on the part of the father to abandon his child or completely to sever the parental relationship with him. The trouble with this is that whatever purpose he may have had in his own mind about the matter, the statute lays down a rule, harsh though it may be, under which the necessity of his consent is dispensed with when he wantonly and wilfully fails to comply with the court decree for

his support of the child, and the court has found that condition to have obtained. Under these circumstances the statute does not require that it be shown that the father has abandoned his child; it makes no reference to abandonment in this provision. It is simply required that it be shown that he has, for a period of 12 months, wantonly and wilfully failed to make the support payments. This may be said to amount to a kind of an abandonment, though the father denies any intention that it do so. But it is not necessary that the court find an abandonment to have occurred in any other manner. This is why the holdings of *Glendinning* and *Johnson* are not applicable to this situation. He cannot retain the benefits of parental rights and at the same time spurn the burden of parental obligation. The court, in making the support decree, had determined what that obligation should be and how it should be discharged. Instead of doing so, as the court found to be the case, he failed to make a single payment from the time the decree was entered.

Does the fact that the child was not in a destitute condition obviate the requirement of the decree that the father make the support payments? Obviously not. It is not the policy of the law that a father may ignore his obligation to support the child until it becomes destitute. The very purpose of the statute is that he should honor the obligation and make the payments so that the child will not reach that condition.

The evidence here is that the mother had made numerous demands on the father that he make the support payments, and that he had not done so. But even if she had not made the demands, it would not relieve him of the obligation to make the payments.

He also asserts that he has not been afforded his rights of visitation by the child for the summer vacation of 1970 as the decree provided for, but if true, neither does this relieve him of the obligation to make the payments, or change the provision of the statute obviating the necessity for his consent.

That the wife had not demanded payment of the support money and the father believed payment to be unnecessary for the child's support does not justify his failure, nor does his complaint that he was hindered in exercising his visitation rights. In Re Merrill (La. App.), 246 S. 2d 207; In Re Genin (La. App.), 240 S. 2d 46. Cf. *Stewart v. Stewart*, 217 Ga. 509 (123 SE2d 547); *Jagoe v. Jagoe*, 183 Ga. 273, 274 (187 SE 874). "[N]o natural parent, regardless of the difficulties he may be experiencing with his former spouse is justified to unilaterally without benefit of court order refuse to pay the amount of support previously ordered by the court. When he chooses this avenue of redress, regardless of his love and affection for the children, he places himself in a position of removing the necessity of his consent to their adoption." In Re Adoption of Reynard v. Kelly, 252 Ind. 632, 639 (251 NE2d 413).

The states from which we have cited cases have statutes generally similar to ours in this respect. All provided that wilful failure to comply with the decree for 12 months obviates necessity for obtaining the father's consent. Some provide that the period is the 12 months next preceding the filing of the petition for adoption; others do not. Many states have adopted this provision in their laws regulating the adoption of children. In addition to the cases cited, see In Re Ackenhausen, 244 La. 730 (154 S2d 380); In Re Burton's Adoption, 147 Cal. App. 125, supra. And see Oregon Rev. Stat. § 109-324. There is evidence supporting the findings and the judgment.

*Judgment affirmed. Bell, C. J., Jordan, P. J., Hall, P. J., Deen, Quillian and Clark, JJ., concur. Pannell and Evans, JJ., dissent.*

EVANS, Judge, dissenting. This controversy grows out of an adoption proceeding. The parents of a minor child were divorced, and child-support was awarded against the father. The mother married again, and her second husband filed proceedings to adopt the child, but did not obtain the written consent of the father, as is required in *Code Ann.* § 74-403 (Ga. L. 1941, pp. 300, 301; 1950, pp. 289, 290;

1957, p. 367; 1960, pp. 791, 792; 1967, pp. 107, 108). In lieu of the father's written consent, the petitioner relied on and alleged that the father had "wantonly and wilfully failed to comply" with the judgment for child-support for a period of 12 months. *Code Ann.* § 74-403 (2), supra, provides that such wanton and wilful failure to comply with a child-support award for a period of 12 months is *an exception* to the statutory requirement that the father's written consent be obtained in such cases.

The trial court held that petitioner proved the father had "wantonly and wilfully" failed to comply with the child-support award for a period of 12 months. The majority opinion of this court affirms the lower court, and points out that on appeal the evidence must be construed to uphold rather than destroy the findings and judgment; and further points out that if there is "any evidence" in this record to support the trial court's findings, same should be affirmed. With these observations by the majority, I am in complete agreement, but I find nothing in the record to support the lower court's findings. The sole question is whether the petitioner carried the burden of proving that the father had "wantonly and wilfully failed to comply" with the child-support award for 12 months. Even when the evidence is construed most strongly in support of the judgment of the lower court under the "any evidence" rule, the petitioner still failed to carry the burden of proving the allegations of his petition.

To prove that the father had not complied with the order is not enough. Petitioner had to prove that the failure to comply was wanton and wilful. Black's Law Dictionary defines these two words thus: " *'Wilfulness'* implies an act done intentionally and designedly; *'wantonness'* implies action without regard to the rights of others; a conscious failure to observe care, a conscious invasion of the rights of others; wilful, unrestrained action."

At most petitioner proved that the father had failed to pay, but absolutely no part of the evidence suggests that such failure was wanton and wilful. The mother testified

that she knew nothing about his employment and kept no record thereof; the evidence is silent as to his health and ability to earn money; the father himself testified that he was unemployed, "in effect" for awhile after the award was made; that he got behind with payments, and then tried to make partial payments which his former wife refused to accept, stating that her lawyer advised her that she had the right to refuse unless all past-due payments were paid. There is no suggestion from the evidence that the father failed to do his best and to offer to pay all that he could pay. The mother also testified to these facts.

The lower court based its findings in part on the failure of the father to make legal tender. A legal tender means a tender of all sums due. See *Code* § 20-1105. The father readily admitted he had not tendered all sums that were due, but this is a far cry from showing that his failure was wanton and wilful.

The record shows that the father was repulsed and thwarted in his efforts to pay as much as he could by the mother's refusal to accept same when she told him if he mailed a check for less than the full amount she would return it. The father had no duty thereafter of continuing to try to tender partial payments. The law does not require the doing of a vain or foolish thing, or to tender money when notice is given by the payee in advance that it will not be accepted. *Williams v. Blanton,* 211 Ga. 491, 493 (86 SE2d 504); *Nickelson v. Owenby,* 208 Ga. 352 (2) (66 SE2d 828); *Groover v. Brandon,* 200 Ga. 153 (5) (36 SE2d 84); *Tolbert v. Short,* 150 Ga. 413 (5) (104 SE 245).

The law never requires one to do an impossible act, and in the case sub judice, if the mother had caused the superior court to cite the father for contempt for failure to pay, he could have successfully defended by showing he was unable to pay. "The moment it appears that there is inability, [to pay] it would clearly be the duty of the judge to discharge the party." *Corriher v. McElroy,* 209 Ga. 885 (3) (76 SE2d 782). In such contempt of court case, the burden

would have been upon the father to show his inability to pay; but in the case sub judice, the *burden was on the petitioner in the adoption proceedings to prove that the father had "wantonly and wilfully failed to comply" with the child-support award for 12 months.*

I therefore dissent and vote to reverse the lower court.

I am authorized to state that Judge Pannell joins in this dissent.